PREVISICH, RESPONDENT, v. BUTTE ELECTRIC RAILWAY
CO., APPELLANT.

(No. 3,214.)

(Submitted March 17, 1913.     Decided March 28, 1913.)

[131 Pac. 25.]

*Personal Injuries—Carrier and Passenger—Street Railroads—
Crowded Cars—Standing on Footboard—Not Contributory
Negligence Per Se — Burden of Proof — Pleadings — When
Reply Unnecessary—Immaterial Variance—Verdict—When
Contrary to Law—Excessive Verdicts.*

Personal Injuries—Street Railroads—Pleadings—Reply—When Unneces-
sary.
1.   Where the complaint in an action by a passenger against a street-
car company alleged, *inter alia*, that a telegraph pole, with which plain-
tiff collided while riding on the footboard of a crowded car, had been
placed within a distance of less than four feet from the track, the affirm-
ative allegation in the answer that such pole was not less than four
feet and one inch away from the track did not constitute new matter
but was the equivalent of a direct denial, requiring no reply.

Same—Verdict on Conflicting Evidence—Conclusiveness.
2.   A verdict attacked on the ground of insufficiency of the evidence
to sustain it will not be disturbed on appeal where the evidence is con-
flicting and where the court, after consideration of a motion for new
trial, stamped the finding of the jury with its approval by denying the
motion.

Same—Pleading and Proof—Immaterial Variance.
3.   Between an allegation in the complaint that the telegraph pole with
which plaintiff came in collision while standing upon the footboard of
a crowded street-car was placed at a distance of less than four feet
from the track, and evidence that it was within dangerous proximity
to the track, there was not such variance as to preclude recovery.

Same—Verdict—When Contrary to Law.
4.   A verdict cannot be said to be contrary to law, unless the evidence
is such that the jury may not find otherwise than in accordance with
the theory of the instructions, and yet have ventured to do so.

Same—Crowded Cars—Duty of Carrier to Warn Passenger.
5.   Where a telegraph pole is in such dangerous proximity to a street-
car track as to constitute it a menace to the safety of a passenger
whom the company, owing to want of space inside, permits to stand on
the footboard, the moving of the car without properly warning him is
culpable negligence.

Same—Negligence—Burden of Proof—Instructions—Proper Refusal.
6.   The burden was on plaintiff to prove that his injury was the re-
sult of defendant's failure to exercise such precautions as the case re-
quired, including omission to warn him of the dangerous proximity of
telegraph poles, by contact with one of which he was brushed from the
footboard where he was riding; hence an instruction requested by de-
fendant which in effect would have cast such burden upon it was prop-
erly refused.

Same—Crowded Cars—Passenger Standing on Footboard not Contributory
Negligence *Per Se.*
7.   It is not contributory negligence *per se* for a person to ride upon
a crowded car or upon the platform or footboard thereof; therefore
an instruction that if plaintiff knew that the car on the footboard of
which he was riding was crowded when he got on, he assumed the risk
of being struck by telegraph poles erected alongside the track, even
though he knew nothing of their proximity to the track, was properly
refused; whether a passenger under such circumstances should be held
to have assumed the hazard of his position is generally a question of
fact for the jury, and not one of law for the court.

Same—Excessive Verdicts.
8.   Verdict for $5,000 in favor of plaintiff, of the age of twenty-one
years at the time of the accident referred to in the paragraphs *supra,*
scaled to $2,500.

*Appeal from District Court, Silver Bow County; John B. Mc-
Clernan, Judge.*

ACTION by Luis Previsich against the Butte Electric Railway
Company.   From a judgment for plaintiff, and an order deny-
ing it a new trial, defendant appeals.   Affirmed on condition.

*Messrs. George F. Shelton, Peter Breen, Fred J. Furman,* and
*A. J. Verheyen,* for Appellant, submitted a brief; *Mr. Breen*
and *Mr. Furman* argued the cause orally.

When plaintiff alleges a specific ground of negligence upon
which he bases his right of recovery, he is absolutely bound to
maintain that ground, or he must fail of his recovery.   (*Pierce*
v. *Great Falls etc. Co.,* 22 Mont. 448, 56 Pac. 867; *Hoskins* v.
*Northern Pacific Ry. Co.,* 39 Mont. 394, 102 Pac. 988; *Thurman*
v. *Pittsburg & Mont. C. Co.,* 41 Mont. 141, 108 Pac. 588; *Knuckey*
v. *Butte Electric Ry. Co.,* 41 Mont. 314, 109 Pac. 980.)   Acts of
negligence proved but not pleaded are not within the issues, and
must be disregarded.   (*Gregory* v. *Chicago Ry. Co.,* 42 Mont. 551,
113 Pac. 1123.)

There was no evidence whatever to sustain the allegation of
the plaintiff's complaint that the telegraph or telephone pole
against which he struck was less than four feet from the track
upon which the car was being operated.   The verdict, therefore,
was clearly against the law, as laid down by the court; and, inas-
much as the plaintiff, in his complaint, particularly specified,
as the ground of negligence upon which he sought to recover,

the fact that the track was constructed by the defendants at a distance of less than four feet from the poles in question, there is a complete failure of proof, for the reason that there is no evidence whatever to sustain the allegation. (*Murray* v. *Heinze,* 17 Mont. 353, 42 Pac. 1057, 43 Pac. 714; *Allen* v. *Bear Creek Coal Co. et al.,* 43 Mont. 269, 289, 115 Pac. 673, and cases cited therein.) It was, therefore, error for the court to go outside of the record and of the specific issues presented and instruct the jury upon abstract principles of law not raised by the pleadings nor presented in the case. The authorities to sustain this are numerous, unanimous and controlling. (*Mitchell* v. *Henderson,* 37 Mont. 515, 97 Pac. 942; *Portland First Nat. Bank* v. *Carroll,* 35 Mont. 302, 88 Pac. 1012; *Howie* v. *California Brewery Co.,* 35 Mont. 264, 88 Pac. 1007; *Hoskins* v. *Northern Pac. Ry. Co.,* 39 Mont. 394, 102 Pac. 988, at page 990; *Forsell* v. *Pittsburg & Mont. C. Co.,* 38 Mont. 403, 100 Pac. 218; *Pierce* v. *Great Falls etc. Ry. Co.,* 22 Mont. 448, 56 Pac. 867.)

Instruction No. 12 refused by the court, as well as instruction No. 13, presents clearly for the determination of the jury and for their consideration an important issue in the case, namely, whether the plaintiff was compelled to stand on the side board of the car because there was not room inside of the car for him to stand. He alleges in his pleadings that such was the fact. He fails to establish that by proof. The issue presented by the denial in the answer made it incumbent upon him to establish these facts by a preponderance of the evidence. The refusal of the court to so instruct the jury was a manifest error, because it failed to give to the jury for their consideration a definite and determinate issue for them to decide, under the pleadings and the testimony presented in the case. (*Buckley* v. *Silverberg,* 113 Cal. 673, 45 Pac. 804; *Fiore* v. *Ladd,* 25 Or. 423, 36 Pac. 572; *Stoll* v. *Loving,* 120 Fed. 805; 38 Cyc. 1126, 1632.)

*Messrs. William* and *Harry Meyer,* for Respondent, submitted a brief; the former argued the cause orally.

Instruction No. 12 tendered by appellant was properly refused, because it instructed the jury, in effect, that it was negli-

gence *per se* for a passenger to ride on the side board of a car. This is not the law.   The instruction was further erroneous because it eliminated entirely the question as to whether or not the respondent occupied his position on the footboard of said car, with the knowledge and consent of the appellant.   This question became very important.   (*Kreimelmann* v. *Jourdan,* 107 Mo. App. 64, 80 S. W. 323.)   "It is evidence of negligence on the part of the street railway company to carry passengers greatly in excess of the seating capacity of its trains and permitting them to stand on the platform and steps of the cars."   (*Lobner* v. *Metropolitan St. Ry. Co.,* 79 Kan. 811, 21 L. R. A., n. s., 972, 101 Pac. 463.)   "It is not contributory negligence *per se* to ride on a crowded car or the platform of such a car.   *   *   *   One who rides on a crowded car assumes the inconvenience resulting from its crowded condition, but the company is not, for that reason, relieved from responsibility of using due care for the safety of the passengers invited upon the car."   (*Lobner* v. *Metropolitan Street Ry. Co., supra;* see, also, *Citizens' St. Ry. Co.* v. *Hoffbauer,* 23 Ind. App. 614, 56 N. E. 54; *Elliot* v. *Newport Street Ry. Co.,* 18 R. I. 707, 23 L. R. A. 208, 28 Atl. 338, 31 Atl. 694; *Seymour* v. *Citizens' St. Ry. Co.,* 114 Mo. 266, 21 S. W. 739; *San Antonio T. Co.* v. *Bryant,* 3 Tex. Civ. App. 437, 70 S. W. 1017; *Lehr* v. *Steinway & H. P. R. Co.,* 118 N. Y. 556, 23 N. E. 889; *Dunham* v. *Public Service Corp. of New Jersey,* 76 N. J. L. 452, 69 Atl. 1012.)   "If a passenger is permitted to enter a car having no vacant place except on the platforms, and the conductor accepts his fare, he is justified in standing on the platform, if he exercises proper care in doing so; and by receiving him the carrier undertakes and gives him assurances that it will take care of him, and guard him against accident, as far as the circumstances permit."   (*McCaw* v. *Union T. Co.,* 205 Pa. 271, 54 Atl. 895; *Cattano* v. *Metropolitan St. Ry. Co.,* 173 N. Y. 565, 66 N. E. 563; *Lynn* v. *Southern Pac. Ry. Co.,* 103 Cal. 7, 24 L. R. A. 710, 36 Pac. 1018; *Topeka City Ry. Co.* v. *Higgs,* 38 Kan. 375, 5 Am. St. Rep. 754, 16 Pac. 673; *Anderson* v. *City etc. Ry. Co.,* 42 Or. 505, 71 Pac. 660.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Action for damages for a personal injury alleged to have been suffered by plaintiff while a passenger upon one of the cars of the defendant street railway company, through the negligence of its agents and servants. The corporation owns and operates a railway, the lines of which traverse certain streets of the city of Butte. One of these lines extends to the village of Meaderville, lying to the northeast. Miners who reside in Butte and are employed in the mines in Meaderville and its vicinity commonly avail themselves of this line in going to and returning from their work. For the accommodation of such as work at night, three cars reach and leave the vicinity of the mines at about three o'clock in the morning. These are known as "owl cars." Those in use at the time of the accident were open for one-half of their length. Along the sides of the open portions extended footboards for the use of passengers in entering and leaving them. The defendant Wharton is the manager of the railway. On the morning of August 20, 1911, the plaintiff, having finished his shift in the Leonard mine, boarded one of the cars (the first one leaving) for Butte and became a passenger thereon. The complaint alleges, in substance, that the defendants negligently permitted such a number of persons to become passengers on this car that it became greatly crowded; that it became so overloaded that there was not sufficient room inside to accommodate all those seeking passage thereon; that for this reason the plaintiff was compelled to stand on the footboard, and did so with the knowledge and consent of defendants; that the track was so constructed that it was within a distance of less than four feet from a line of telegraph or telephone poles situated on the west side thereof; that, notwithstanding this fact and the fact that it was dangerous to move cars along the track while passengers were standing on the footboards the defendants negligently moved the car upon which the plaintiff was a passenger; that the plaintiff did not know that the track was so constructed that the car would pass near the line of poles; that, while plaintiff

was riding on the car, defendants allowed it to become so crowded that plaintiff, being forced to maintain his place thereon by holding to the handhold thereon on the side next to the line of poles, was struck by one of said poles and hurled to the ground; and that when he was struck he was in such a position that he could not see that the car was so near the poles, whereas the defendants knew, or in the exercise of ordinary care should have known, that the plaintiff was likely to be injured by collision with one of them. The injuries suffered by the plaintiff are described as injuries to his head, right eye, right shoulder, and other portions of his body, resulting in great mental and physical pain and suffering and permanent disability. The answer, after putting in issue the charges of negligence, alleges affirmatively that "the shortest distance between said street-car tracks and said poles was not less than four feet and one inch at any of the times mentioned in the complaint, and that the plaintiff, in the position which he occupied on the said car in question, saw, or could, in the exercise of ordinary care, have seen, each and every one of the poles in said complaint mentioned, and the distance of its position from the said street-car track, said distance being, as aforesaid, in no case less than four feet and one inch." There was no replication. When the introduction of evidence by plaintiff was completed, the court sustained a motion for non-suit in favor of defendant Wharton and directed judgment to be entered in his favor. A like motion on behalf of the corporation was denied. The jury returned a verdict in favor of plaintiff for $5,000. From the judgment entered thereon, and from an order denying its motion for a new trial, the corporation has appealed.

1. When the plaintiff offered evidence to sustain the [1] allegations of the complaint, objection was made to its introduction on the ground that the pleadings did not present a triable issue because the new matter alleged in the answer, standing without traverse by reply, constituted a complete defense to the action. The overruling of this objection is assigned as error, and the contention is seriously made that it is fatal to the

judgment because the plaintiff, by his admission thus made, established the existence of a state of facts which precluded a recovery. The contention is without merit. The allegation in question, quoted in the statement, following the denial of the charge in the complaint that the track was constructed within a distance of less than four feet from the line of poles, and that the plaintiff did not know that the cars, in moving along the track, would come in such close proximity to them, though affirmative in form, is nothing more than a second traverse of these allegations. It is what may be termed a counter averment, the equivalent of a direct denial. Proof of circumstances tending to show knowledge by the plaintiff of the dangerous conditions, and hence that he was open to the imputation of negligence in assuming a position on the footboard, would have been admissible under the denial; hence affirmative allegations on the subject were neither necessary nor proper, and a reply to them was not required. (*Mauldin* v. *Ball,* 5 Mont. 96, 1 Pac. 409; *National Wall Paper Co.* v. *McPherson,* 19 Mont. 355, 48 Pac. 550; *Rand* v. *Butte El. Ry. Co.,* 40 Mont. 398, 107 Pac. 87.)

2. It is argued that the evidence is insufficient to sustain the verdict: (1) In that it fails to show that there was not room inside of the car to accommodate the plaintiff, and hence that it was necessary for him to stand upon the footboard; (2) in that it does not tend to show that the line of poles was within less than four feet from the line of the track; and (3) in that it does not tend to show that the plaintiff did not know, or could not by the exercise of ordinary care have ascertained, this fact. We shall not undertake to set out in detail and analyze the statements of the different witnesses with a view to reconcile them. As is usual in such cases, these statements are not in harmony upon any point with reference to which the defendant makes its contention. The testimony shows that there were some 250 men coming off shift and making ready to take cars into Butte. Of the three cars about due to leave, only one had arrived. Each man was anxious to secure passage upon it; hence there was a rush both for seats and for standing room. Plaintiff was among

the last to obtain a place, and, as he testified, all the seats, as well as standing room inside, had then been taken.   He obtained a place upon the footboard.   The rest of it was quickly filled by those that followed.   These crowded him so that he was compelled to hold onto a handhold or one of the posts supporting the roof in order to retain his place.   While the car was lighted, he could not see because of the darkness outside, and the crowding of the men who were standing on the footboard, and not knowing of the proximity of the line of poles, and not being warned of this fact, he did not anticipate danger from them.   He had traveled over the line before, but had on such occasions occupied a seat inside the car and had not observed conditions. There was evidence that all of the poles were beyond a distance of four feet from the track.   There was also evidence that at least one of them (the one which struck plaintiff) was within a distance of less than four feet.   One witness, who had occupied a seat near where plaintiff was standing, testified, in effect, that the plaintiff, having dropped his bucket, made an effort to catch it, and in doing so jumped or fell from the car.   This witness stated further that he had warned the men on the footboard to look out for the poles.   Another witness testified that, when the plaintiff was found by those who went back to ascertain if he was hurt, he was about midway between two of the poles, which were some seventy-five feet apart.   The plaintiff is a foreigner, and, having little knowledge of the English language, cannot understand it when it is spoken.

It may be admitted that the case made by the evidence as a [2]   whole is not very satisfactory from any point of view.   Yet it presented a case for the jury, and their finding thereon, having been approved by the trial court in denying the motion for a new trial, we must accept as binding upon us, even though we should have reached a different conclusion upon it.

The court proceeded upon the assumption that it was incumbent upon the plaintiff, in order to recover, to show that the particular pole which brushed him from the car was within four feet of the track, and in the instructions so charged the jury

As we have already pointed out, there was evidence tending to establish this fact. While this feature of the case is not discussed in the brief of counsel, we venture the remark that [3] evidence showing that the pole was in such close proximity to the track as to be likely to come in collision with a passenger standing on the footboard and injure him would not have presented such a variance from the allegation in the complaint as to preclude a recovery. (*Robinson* v. *Helena L. & Ry. Co.,* 38 Mont. 222, 99 Pac. 837.)   The purport of the allegation is that the line of poles was within dangerous proximity to the track, and evidence showing this condition would have been sufficient to justify a recovery, even though it were not demonstrated that any one of the poles was actually within the distance alleged.

3. The third contention is that the verdict is contrary to the law as declared in instructions 8 and 9 submitted to the jury. In the former the court advised the jury that, "in order for the plaintiff to recover in the action, it is necessary that he should have established, by a preponderance of all the evidence in the case, that it was dangerous to run cars on the track if they were crowded and passengers were standing on the footboard." The latter instruction is in part as follows: "That in order for the plaintiff to recover in this action, he must have established, by a preponderance of all the evidence in the case, that he did not know, and could not, in the exercise of ordinary care, have known, that the said street-car tracks were so constructed that the car upon which the plaintiff was a passenger would come in such close proximity to said telegraph or telephone poles as set forth in said complaint; and, unless you find that this has been established by a preponderance of all the evidence in the case, the plaintiff cannot recover in this action." It is insisted that, under each of these instructions, the jury were bound to find for the defendant because there is no evidence in the case furnishing a basis for the inference that the proximity of the line of poles to the track was a source of danger to one standing upon the footboard, nor tending to show that, if plaintiff did not actually know the conditions, he could not, by the exercise of ordinary care, have gained knowledge of them.

The railway track was the property of the defendant. It was using it for the carrying of passengers. If the proximity of it to the line of poles was a fault in the construction, it was the fault of the defendant. That it was a source of danger to one standing on the footboard is shown by the fact, if it was the fact, that the plaintiff was brushed from his position by one of the poles as the car passed it, and was thus injured. It was a question for the jury, upon the evidence, whether the plaintiff was injured in this way or whether he fell or jumped off in an effort to recover his bucket. It was also a question for the jury whether, under the circumstances disclosed by the evidence, in the exercise of ordinary care for his own safety, the plaintiff must have known that, in assuming a position on the footboard with others, he was exposing himself to the danger arising from the proximity of the poles. The instructions were both formulated to meet plaintiff's theory of the case, and since, as has already been pointed out, the evidence was sufficient to justify a verdict in his favor, it cannot properly be said that the verdict is contrary to the law. (*Mette & Kanne Distilling Co.* v. *Lowrey,* 39 Mont. 124, 101 Pac. 966.) A verdict is contrary to the law when the condition of the evidence is such that the jury may [4] not find otherwise than in accordance with the theory of the instructions, and yet have ventured to do so. (*Allen* v. *Bear Creek Coal Co.,* 43 Mont. 269, 115 Pac. 673.)

4. Complaint is made that the court erred in submitting to the jury instructions 2, 3, and 5. It is said that, while correct as abstract propositions of law, they have no application to the issues involved in this case. Instructions 2 and 3 define generally the duties of carriers of passengers, as they are laid down in sections 5302, 5303, and 5347 of the Revised Codes, with reference to overcrowding of their vehicles, the furnishing of accommodations for passengers, etc. Instruction 5 defines the rights and duties of such carriers when its cars have been permitted to become overcrowded, and declares it negligence on the part [5] of the carrier, if it elects to move its cars while in that condition, to omit any precaution in the management of them which

the circumstances require, looking to the safety of the passengers. In our opinion, they were entirely pertinent to the issues in the case and were properly given. If the line of poles was in such dangerous proximity to the track as to constitute them a menace to the safety of passengers whom the agents of the defendant, owing to the want of space inside, permitted to stand on the footboard, the moving of the cars without properly warning such passengers was culpable negligence.

5. Error is assigned upon the refusal of the court to give requested instructions 12, 13, 15, and 16. Instruction 16 is as follows: "If you believe from a consideration of all the evidence that it has been established by a preponderance thereof that the plaintiff was warned of the danger of standing upon the side board of the said car, and thereafter still continued to occupy the position, and by reason of so occupying said position was hit by the pole and knocked from the said car, and suffered the injury complained of in consequence thereof, then you are instructed that the plaintiff voluntarily assumed the position of danger and had notice of the said danger, or, by the exercise of reasonable care, could have known thereof, and assumed the risk incident to his said position, and cannot recover in this action."

To justify a recovery, it was incumbent upon the plaintiff to show, by a preponderance of the evidence, that his injury was the result of the failure, on the part of the defendant, to observe such precautions as the exigencies of the case required. The substance of the charge in the complaint is that defendant [6] moved its cars negligently along the line of poles in dangerous proximity to the track, knowing that the plaintiff and others were standing crowded together on the footboard. Among the precautions which the circumstances required it to observe was to warn them of the possible danger. Whether it or anyone else gave warning (and knowledge from any source in plaintiff would have been effective to relieve the defendant from the imputation of negligence in this behalf) was a question of fact to be resolved by the jury. The burden rested upon the plaintiff, not upon the defendant. So that an equipoise in

the evidence would have required a resolution of it in favor of defendant. The evidence offered by the defendant on this point was defensive merely and not in avoidance. The instruction cast upon it the burden of proof and was therefore not a correct statement of the rule of law applicable. Though it was offered by the defendant, and though defendant could not have complained if it had been given, the court cannot be put in error for having refused it. Instructions 12 and 15 are open to the same objection. The latter would have been an express direction to the jury that, if it appeared from the evidence, by a preponderance thereof, that the plaintiff dropped his bucket and, in order to recover it, jumped from the car and was injured, he could not recover, whereas an equipoise in the evidence on this point would have been sufficient to acquit the defendant.

Instruction No. 13 is as follows: "You are further instructed that if the plaintiff voluntarily got upon the side board of said car after he knew that the said car was crowded, and that there was no opportunity for him to get inside of the car and in a position of safety, he thereby assumed the risk of the danger of being hit by the pole, even though the same was not brought to his knowledge or attention, and he cannot recover in this action." This instruction would have required the jury to return a verdict for the defendant, for the plaintiff testified that he took his position on the footboard because the car was crowded and there was no room inside. It is not contributory negligence *per se* [7] for a person to ride upon a crowded car or upon the platform of such a car; nor is it *per se* negligence for such person to stand on the footboard of a street-car which is crowded.

In *Lobner* v. *Metropolitan St. Ry. Co.*, 79 Kan. 811, 21 L. R. A., n. s., 972, 101 Pac. 463, it was said: "The practice of inviting and permitting passengers to ride on the platform of street-cars is so common that it cannot be held, as a matter of law, that a passenger in doing so is guilty of contributory negligence. One who rides on a crowded car assumes the inconvenience resulting from its crowded condition; but the company is not, for that reason, relieved from responsibility of using due care for the safety of the passengers invited upon the car."

In *San Antonio T. Co.* v. *Bryant*, 30 Tex. Civ. App. 437, 70 S. W. 1015, the court said: "It is not negligence *per se* for a passenger to stand upon the platform, steps, or running-board of an electric street-car which is crowded; and the weight of authority also supports the rule that it is not contributory negligence, as a matter of law, for a passenger to stand upon the platform of a car or the running-board, whether there be vacant seats or not in the inside of the car. And whether the passenger be standing upon the platform, running-board, or steps, the question of negligence and contributory negligence is held to be, in the majority of cases, a question for the jury to determine." Again, in *McCaw* v. *Union T. Co.*, 205 Pa. 271, 54 Atl. 895, it was said: "If a passenger is permitted to enter a car having no vacant place except on the platforms, and the conductor accepts his fare, he is justified in standing on the platform, if he exercises proper care in doing so; and, by receiving him, the carrier undertakes and gives him assurances that it will take care of him and guard him against accident, as far as the circumstances permit." The rule thus stated is recognized and applied by the courts quite generally, as appears from the following citations: *Geitz* v. *Railway Co.*, 72 Wis. 307, 39 N. W. 866; *Powers* v. *City of Boston*, 154 Mass. 60, 27 N. E. 995; *Lehr* v. *Railroad Co.*, 118 N. Y. 556, 23 N. E. 889; *Elliott* v. *Railway Co.*, 18 R. I. 707, 23 L. R. A. 208, 28 Atl. 338, 31 Atl. 694; *Citizens' St. Ry. Co.* v. *Hoffbauer*, 23 Ind. App. 614, 56 N. E. 54; *Seymour* v. *Citizens' Ry. Co.*, 114 Mo. 266, 21 S. W. 739; *North Chicago St. Ry. Co.* v. *Williams*, 140 Ill. 275, 29 N. E. 672; *Doolittle* v. *Southern Ry.*, 62 S. C. 130, 40 S. E. 133; *Dunham* v. *Public Service Corp.*, 76 N. J. L. 452, 69 Atl. 1012; *Anderson* v. *City Ry. Co.*, 42 Or. 505, 71 Pac. 659; Joyce on Electric Law, sec. 543. Of course, as was said in *Lobner* v. *Street Ry. Co.*, *supra*, a passenger may assume such an obviously dangerous position that he will be held, as a matter of law, to have assumed the hazard of so doing; but the question is generally one for the jury, and not one of law for the court. Since the instruction would have told the jury that the plaintiff assumed the hazard of the position which he had taken upon the

footboard, without reference to his knowledge of the conditions, it was erroneous and properly refused.

6. The last contention is that the verdict is excessive, and with [8] this contention we agree. The plaintiff was, at the time of the injury, a strong, healthy man of the age of twenty-one years. The injury occurred on August 20, 1911. He did not call a physician until the following day. At that time he had a contusion on the right side of the head and was suffering somewhat from concussion, as was indicated by an incoherence in his speech. He complained of pains in the lumbar region, but no lesions were visible there. He also complained of pains in his right side, and there were evidences of contusions on that part of his body. No bones were broken. Judging from the testimony of the attending physician, the contusions themselves were not serious and readily yielded to treatment. All objective symptoms had disappeared by the end of six weeks. The most serious result was a traumatic pleurisy which developed in the right side immediately following the accident. This kept the plaintiff confined to his bed for some three or four weeks, during which the visits of the physician continued. Thereafter the plaintiff visited his physician at his office from time to time, until sometime in December, when the visits ceased altogether. The pleurisy yielded slowly to treatment, and, while the physician expressed the opinion that the after effect of it had not entirely disappeared, he was unwilling to express a definite opinion that there was or would be a chronic diseased condition or any permanent disability whatever. A physician who was called by the defendant, but who had made no examination of the plaintiff except a superficial one in the courtroom, testified that, when a chronic condition obtains after such an injury as that sustained by the plaintiff, it is usually tubercular in character. He stated that he did not observe anything in plaintiff's appearance to indicate any tubercular symptoms, but that, on the contrary, he appeared to be free from disease. The plaintiff testified, in effect, that he still suffered from the hurt and the resulting illness, and that he had not been able to do any work since he received it. When he sent for the attending physician

to administer to him, he sent also for an attorney, and notwithstanding the statement of the physician that he was not then fully conscious, owing to the concussion from which he was then suffering, according to his own story he then related to the attorney the facts touching the accident so as to enable the latter to draw the complaint in this case. It was verified by plaintiff five days later, and, though he has only a slight knowledge of the English language, he testified, through the interpreter, that he had examined the complaint without substantial assistance from anyone, and thereupon verified it with a full understanding of the allegations contained in it. The fact that it contains allegations of permanent injury made at a time when neither he nor his physician, as the latter himself admitted, could possibly have foreseen what the probable result would be, arouses a suspicion that his statement of his condition at the time of the trial was, to say the least, very much exaggerated. On the whole, the evidence tends to support the conclusion that the plaintiff, if such is not already the case, will presently be restored to full health. Under the circumstances, we think one-half of the amount of the award of the jury sufficient to compensate him for the injury which he appears to have sustained.

The cause is accordingly remanded to the district court, with direction to grant the defendant a new trial, unless, within thirty days after the *remittitur* is filed, the plaintiff shall file with the clerk his written consent that the judgment may be reduced to $2,500. If such consent is given, the judgment shall be modified accordingly as of the date of its original entry, and, together with the order denying a new trial, will stand affirmed. That part of the judgment awarding costs in the district court is not to be disturbed. The plaintiff shall recover the costs on appeal.

MR. JUSTICE HOLLOWAY and MR. JUSTICE SANNER concur.